BENTON, C.J.
Appellant Kyle Walling appeals his sentence of life without the possibility of parole for a first-degree felony murder committed when he was sixteen, imposed under a mandatory sentencing scheme. Based on Miller v. Alabama, — U.S. -, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), the state concedes that his sentence is illegal, as a federal constitutional matter. On this issue alone, we reverse and remand for resentencing, following the precedent recently laid down in Washington v. State, 103 So.3d 917 (Fla. 1st DCA 2012).
The crime occurred in March of 2010. Although appellant was waiting a few blocks away when the fatal shot was fired, *662 he participated in planning the victim’s robbery, and supplied the gun. Tried as an adult, appellant was convicted by a six-person jury of first-degree felony murder and attempted robbery. In finding him guilty of attempted robbery, the jury found his accomplice carried the firearm. As then required by statute, the sentencing judge imposed a life sentence without parole. Although still on the books, this statute has not survived the decision in Miller unscathed.
Appellant raises three other issues that merit discussion: 1) whether appellant was entitled to a twelve-member jury under section 913.10, Florida Statutes (2011); 2) whether his confession was coerced or otherwise made involuntarily; and 8) whether the jury was unfairly contaminated by prejudicial statements during voir dire. Because these issues all go to the validity of the conviction, reversal of appellant’s sentence on the authority of Miller does not resolve them.
Florida grants the right to a twelve-person jury in capital cases by statute. Acknowledging that our supreme court has defined a “capital case” as a case where the death penalty itself is a legal possibility, he contends that, in light of Roper, Graham, and Miller, the traditional definition of a capital case, see, e.g.,State v. Hogan, 451 So.2d 844, 845 (Fla.1984) (“For the purposes of defining ‘capital’ under [section 913.10] and rule [3.270, Fla. R.Crim. P.] we hold that a capital case is one where death is a possible penalty.”), no longer controls on the question of the jury’s size. Citing Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), which prohibits the death penalty for juvenile offenders, appellant argues that life without parole is for juveniles the equivalent of the death penalty for adults; and thus entitles him to a twelve-member jury under section 913.10, Florida Statutes (2011), which mandates a twelve-member jury for “capital cases.”
Life without parole for a juvenile is not the legal equivalent of death for an adult. Appellant contends nevertheless that he was entitled to be tried by a twelve-person jury. He focuses on the Supreme Court’s comparisons of life without parole for a juvenile to death for an adult in Graham and Miller.[1] But there is a difference between sharing “some characteristics” and a legal equivalence for all purposes. Appellant ignores the starkest factor distinguishing the death penalty from all other forms of punishment: its irrevocability. Unlike an adult condemned to death, a juvenile serving a life sentence without parole can be retried, resentenced or released where factual or other errors require correction. Only if the accused can lawfully be put to death does section 913.10 require a twelve-person jury. Section 913.10 has never been interpreted to apply to cases where death was not a legal possibility.
Even when a state statute defines an offense as a capital crime, section 913.10 does not require a twelve-person jury if federal constitutional requirements rule out death as a possible penalty. Rape was once punishable by death. After the Court decided Coker v. Georgia, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977), *663 however, the death sentence was outlawed as punishment for the rape of an adult woman. Our own supreme court applied the rule in Coker to the rape even of a child in Buford v. State, 403 So.2d 943 (Fla.1981). The question later arose whether, where a constitutional rule precluded the possibility of a death sentence, a twelve-member jury was required for the trial of what was still nominally a “capital offense,” so classified by statute.
We were not persuaded that “the fact that Section 794.011(2) defines sexual battery of a child 11 years of age or younger as a ‘capital felony’ means, as appellant urges, that the [ ] procedural requirements [laid down in section 913.10 mandating a twelve-person jury] are still applicable notwithstanding the fact that the capital feature of the crime has been effectively eliminated.” Cooper v. State, 453 So.2d 67, 68 (Fla. 1st DCA 1984). We reach the same conclusion today.
Appellant contends that death is sufficiently different to justify its abolition as a sentence for juveniles altogether, whatever their crimes, but not so different from life without parole that the two sentences can be treated differently when it comes to the size of the jury. Such disparate analyses bespeak no discernible principle. In sum, any capital case for purposes of section 913.10 is a case where the death sentence may lawfully be pronounced.
As for appellant’s confession, we must review the trial judge’s finding that it was voluntary and not the product of coercive or other improper police conduct, in light of the decisions in Arizona v. Fulminante, 499 U.S. 279, 285-86, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) and Ramirez v. State, 739 So.2d 568, 576 (Fla.1999). Appellant alleges that his confession was indirectly coerced because police detectives told his mother, who then conveyed to him that, if he confessed, he would not be charged with murder. After appellant’s arrest, testimony showed, his mother came to the police station and spoke with two detectives before speaking with appellant privately: She urged honesty on her son and warned him that if he did not “speak up now,” he would be charged as an accessory to murder. She also told him that if he did not talk to the police, they would charge him with murder as a principal.
But the evidence did not persuade the trial judge that any implicit promises conveyed by appellant’s mother were actually made by the police detectives. She testified that the detectives told her appellant would not be charged as the shooter if he was not the shooter, but she did not testify that they said he would not be charged with murder as a quid pro quo for making a statement. In fact, she could not recall any discussion concerning murder charges. The trial court was free to credit the testimony of a detective that
we were relatively sure that [appellant] was not the shooter in the robbery, and that we needed his statement to make sure if he was not the shooter we did not want to have him charged as the shooter. If he committed the robbery, then he would face a charge of robbery, and I told her that he would in fact face a charge.
Any misinformation she conveyed to her son cannot be attributed to impropriety on the part of the detectives that deprived appellant of the ability to make a free choice.[2]
Lastly, we note that appellant failed to preserve the argument that his *664 jury was tainted by prejudicial comments made on voir dire in response to defense counsel’s questions.[3] At no time did appellant object to any of the allegedly prejudicial comments, move to strike the panel, or request individual voir dire. Nor did appellant renew any prior objection to any member of the panel before accepting the jury that was sworn.[4] See Joiner v. State, 618 So.2d 174, 176 (Fla.1993); § 924.051(1)(b), Fla. Stat. (2011). Actual bias or prejudice to appellant that would constitute fundamental error was not proven. See Street v. State, 636 So.2d 1297, 1301 (Fla.1994).
We affirm the conviction but vacate the sentence and remand for resentencing.
ROBERTS, J., concurs.
WRIGHT, WILLIAM L„ Associate Judge, concurs with Opinion.

. The Supreme Court in Graham v. Florida, - U.S. —, -, 130 S.Ct. 2011, 2027, 176 L.Ed.2d 825 (2010) acknowledged that life without parole sentences "share[] some of the characteristics with death sentences that are shared by no other sentences. The State does not execute the offender sentenced to life without parole, but the sentence alters the offender's life by a forfeiture that is irrevocable.” Id. The Supreme Court in Miller repeatedly refers to life without parole as the "harshest” possible penalty for juveniles. — U.S. -, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012).

. Despite appellant’s mother’s urging him to tell the truth, she also said, "I’m scared to let you talk to [the detective]. Are you sure this is what you want to do? To which appellant responded, "I swear this is — this is the best thing."

. A venireperson who said, "excuse me but I feel like he's a thug," did not serve on the jury. Defense counsel stated no objection to this comment.

. On appeal, appellant identifies only one juror who served over objection, and this juror was excused before deliberations.