SUAREZ, J.
 

 Barry McIntosh appeals from a final judgment of conviction and sentence. We affirm.
 

 McIntosh and his co-defendants were charged by indictment with the first degree murder and armed robbery of a UPS driver. The key issue at trial was who shot the driver, and whether McIntosh was involved. McIntosh was implicated by his co-defendants, and was arrested. After his arrest, Detective Rode escorted McIntosh to be fingerprinted and photographed. Rode testified that, on the way to booking, McIntosh spontaneously commented that “it” was an accident, and that he didn’t want to be blamed for something he didn’t do. Rode then walked McIntosh upstairs to be interviewed. In the presence of two detectives, Rode administered
 
 Miranda
 
 warnings both in verbal and written form, and McIntosh affirmed each right both verbally and in writing. McIntosh waived his rights in writing on a waiver form. At some point in this process, the detectives learned that McIntosh was a seventeen year old juvenile, but they did not offer
 
 *916
 
 him any opportunity to speak to his mother. The interviewing detective testified that McIntosh was calm, articulate, and that he was able to speak with him without any effort to explain or clarify issues for him. McIntosh gave a statement, admitting that he was the shooter, and that his co-defendants participated. The interview lasted about twenty-five minutes.
 

 At the suppression hearing, McIntosh’s testimony differed in many respects from that of the detectives. McIntosh testified that the police told him that his mother and girlfriend would accompany him to the station, and that was the only reason he agreed to go with the police. Once at the station, McIntosh stated that he asked if he could see his mother or girlfriend and to use the phone, and both requests were denied. McIntosh testified that the detectives told him that he was facing either life in prison or the death penalty, and that if he cooperated he would get leniency. McIntosh testified that he told the detective that he had nothing to say to him, at which point the detective escorted him to be fingerprinted. Along the way, McIntosh then blurted out that “it” was an accident, and that he was not going to take the blame for something he didn’t do. At this point, the detective took McIntosh to the interview room and gave him
 
 Miranda
 
 warnings. McIntosh testified that he then asked if he could “have someone present at the time with me?”
 

 At trial, experts for the defense testified that McIntosh was on the high end of the mental retardation scale and could not comprehend either the verbal or written explanation of his
 
 Miranda
 
 rights. The State’s expert opined that similar testing of McIntosh showed him to be low functioning, but capable of understanding his rights as they were explained to him. The trial court heard extensive testimony from defense and state witnesses, McIntosh himself,
 
 [1]
 
 as well as his taped statement.
 

 The trial court found that the officers’ testimony was more credible than McIntosh’s, and that the defendant had sufficient understanding of his rights, both intellectually and from his prior experience with the legal system, such that he knowingly and voluntarily waived his right to remain silent. The trial court denied the defense motion to suppress McIntosh’s
 
 post-Miranda
 
 statements as well as motion for new trial. McIntosh was convicted as charged and sentenced to life on all counts charged.
 

 McIntosh argues on appeal that his post-arrest statement should have been suppressed because he did not properly waive his
 
 Miranda
 
 rights. He claims that he did not have the mental capacity to either understand or waive his rights, or alternatively, that his waiver was involuntary because the police failed to notify his parent(s) prior to questioning. McIntosh relies on
 
 Ramirez v. State,
 
 739 So.2d 568 (Fla.1999). Although the facts of
 
 Ramirez
 
 differ significantly from the facts in McIntosh’s case,
 
 [2]
 
 the analysis is applicable.
 

 The relevant
 
 Ramirez
 
 factors to be applied in analyzing the voluntariness of a juvenile’s confession include: (1) the manner in which the
 
 Miranda
 
 rights were administered, including any cajoling or trickery; (2) the suspect’s age, experience, background and intelligence; (8) the fact
 
 *917
 
 that the suspect’s parents were not contacted and the juvenile was not given an opportunity to consult with his parents before questioning; (4) the fact that the questioning took place in the station house; and (5) the fact that the interrogators did not secure a written waiver of
 
 Miranda
 
 rights at the outset.
 
 Ramirez,
 
 739 So.2d at 576.
 
 See also State v. S.V.,
 
 958 So.2d 609 (Fla. 4th DCA 2007) (finding that juvenile’s waiver of his
 
 Miranda
 
 rights was knowing and voluntary; juvenile was seventeen years old and had previously been arrested, he understood English, he readily answered questions and appeared calm throughout interview, he did not execute a written waiver form, and juvenile did not request to speak with a parent until after interview).
 

 The trial court properly denied the defense motion to suppress voluntary,
 
 post-Miranda
 
 statements by McIntosh, as his
 
 Miranda
 
 waiver was knowing, voluntary and intelligent. First, by reading the transcript of his suppression hearing testimony we conclude that the trial court correctly ascertained that McIntosh had no trouble understanding the questions put to him by counsel or the court; he was able to answer the questions coherently and relate the facts in a fairly articulate manner; he appeared calm throughout. His answers belie the defense’s argument that he is mentally retarded and incapable of understanding. In addition, McIntosh does not base his argument on any defect in the
 
 Miranda
 
 warnings as given, merely his understanding of them.
 

 Second, as the trial court found, McIntosh’s attempt to argue that he didn’t know what was going on after his arrest is not credible in light of his past experiences within the justice system. At seventeen years of age, he already had eight prior arrests and interactions with law enforcement sufficient to enlighten him regarding his rights under the present circumstances.
 
 See id.
 

 Finally, the trial court found that there was no “coercion on the part of the police and that the detective did not take advantage of the defendant.” Diminished mental capacity does not in and of itself affect the admissibility of a confession, absent improper coercive police conduct.
 
 See Colorado v. Connelly,
 
 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986) (holding that the defective mental condition of the accused, even when clearly established in a timely manner in support of an effort to exclude the statements, does not by itself render the statements involuntary within the meaning of the due process clause of the United States Constitution). The “verbal browbeating” McIntosh was allegedly subjected to during the booking process does not rise to the level of coercion, cajolery or trickery.
 
 [3]
 
 Furthermore, the detective’s actions after McIntosh’s spontaneous admission of involvement were appropriate — he stopped talking to McIntosh, called in another detective, they administered
 
 Miranda
 
 and proceeded to interview McIntosh. Although McIntosh testified that he asked to have someone present with him,
 
 [4]
 
 the detectives testified that McIntosh did not ask for his mother at any point in his
 
 post-Miranda
 
 interview and they did not offer to contact a parent
 
 *918
 
 for him. There was no police overreaching under either scenario.
 

 Although the trial court did not specifically mention the parental notification issue in its order on the motion to suppress, the court did hear argument from both sides on this issue during the suppression hearing, found the detective’s testimony to be more credible, and clearly addressed all
 
 Ramirez
 
 factors except the notification issue. To be sure, “[t]here is no constitutional requirement that police notify a juvenile’s parents prior to questioning the juvenile.”
 
 Frances v. State,
 
 857 So.2d 1002, 1003-04 (Fla. 5th DCA 2003) (citing
 
 Brancaccio,
 
 773 So.2d at 583-84). Nevertheless, “if the juvenile indicates to police that he or she does not wish to speak to them until he or she has had an opportunity to speak with parents, the questioning must cease.”
 
 Id.
 
 at 1004 (citing
 
 B.P. v. State, 815
 
 So.2d 728, 729 (Fla. 5th DCA 2002)). Indeed, parental notification is merely one of several “totality of circumstances” factors that the trial court must examine in weighing the admissibility of a juvenile confession:
 

 Juvenile confessions have always been held to be admissible, though the courts have necessarily regarded them with closer scrutiny because of the age of the person involved.
 
 See T.B. v. State,
 
 supra [306 So.2d 183 (Fla. 2d DCA 1975)]. In
 
 State v. Francois, 197
 
 So.2d 492 (Fla.1967), our Supreme Court declined to adopt an exclusionary rule which would automatically exclude all confessions given by those who were still under the jurisdiction of the juvenile court. The United States Supreme Court has held that the
 
 admissibility of a juvenile confession depends upon the “totality of circumstances” under which it was made. Gallegos v. Colorado,
 
 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed. 325 (1962). The more immature the juvenile may be, the greater likelihood exists that his confession will be deemed inadmissible. The fact that a juvenile’s confession was given before he had the opportunity to talk with his parents or an attorney is certainly a factor militating against its admissibility.
 
 But, the existence of this fact does not preclude a finding of vol-untariness depending upon all of the other circumstances surrounding the confession.
 

 Doerr v. State,
 
 383 So.2d 905, 907 (Fla.1980) (emphasis added). We conclude that, given the totality
 
 of the
 
 circumstances, the trial court did not commit reversible error, and McIntosh’s post-Mi
 
 randa
 
 statements were not rendered involuntary because his mother was not present, and the record reflects that McIntosh did not seek to have a parent present during questioning. The trial court’s analysis of the
 
 Ramirez
 
 factors took into consideration the juvenile’s age, maturity, prior arrest history, as well as the circumstances surrounding his arrest and confession, written waiver, and police behavior. We affirm the judgment of conviction and sentence.
 

 Affirmed.
 

 [1]
 

 . Who, as it turned out, had been arrested about eight times previously for offenses ranging from escape, aggravated assault, retail theft, etc. In fact, the last case for which McIntosh had been arrested was direct-filed to adult court and resulted in adult probation.
 

 [2]
 

 . In
 
 Ramirez,
 
 the juvenile defendant was in custody, questioned by the police, made significant admissions of guilt, and was
 
 then
 
 given
 
 Miranda
 
 warnings. McIntosh was first Mirandized, then he waived in writing and gave his statement.
 

 [3]
 

 . The test for determining whether a particular confession or statement is involuntary is still whether, in considering the totality of the circumstances, the reviewing court can conclude that, because of the officer’s conduct, the defendant was unable to make a choice free from unrealistic hope and delusions as to his true position.
 
 Walker v. State, 771
 
 So.2d 573, 575 (Fla. 1st DCA 2000).
 

 [4]
 

 . McIntosh requested to see his girlfriend
 
 or
 
 mother while being booked, not while being interviewed.