SWANSON, J.
On March 4, 2010, Tyree Rashaad Washington, at the age of sixteen, was involved in the shooting death of Chris Pitcock. The plan was to scare Pitcock with a gun and to rob him, but the robbery plan went awry and Pitcock was killed. A jury found Washington guilty of first-degree felony murder while engaged in the commission of an attempted armed robbery, and of attempted armed robbery in the course of which Washington’s accomplice, Timothy Chavers, carried the firearm. For the count of felony murder, the trial court adjudicated Washington guilty and sentenced him to a term of natural life. For the count of attempted armed robbery, the trial court imposed a sentence of fifteen years, to run concurrently with the life sentence.
Felony murder in Florida is a capital felony punishable by death or a mandatory sentence of life without the possibility of parole. See §§ 782.04(l)(a)2.d., and 775.082(1), Florida Statutes (2009).[1] In Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), the United States Supreme Court invalidated the death penalty for all juvenile offenders who were under the age of eighteen at the time of the commission of the offense. Then, in Graham v. Florida, — U.S.-, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), the Court held that life without the possibility of parole violates the Eighth Amendment’s ban on cruel and unusual punishment when imposed on juvenile non-homicide offenders. In the present appeal, Washington raises two points for reversal. We affirm his first point without further comment. As for his second point, addressing his mandatory life sentence without the possibility of parole, the state correctly concedes that this mandatory sentencing scheme for offenders who, like Washington, were under the age of eighteen when the crime was committed, “violate[s] the principle of proportionality, and so the Eighth Amendment’s ban on cruel and unusual punishment,” as most recently decided by the Supreme Court in Miller v. Alabama, — U.S. -, -, 132 S.Ct. 2455, 2475, 183 L.Ed.2d 407 (2012).[2] Accordingly, we vacate Washington’s life sentence and remand for resentencing.
*919 Miller was a consolidated appeal in which the Supreme Court was asked to review the constitutionality of sentences imposed on two fourteen-year-old offenders, one in Alabama and the other in Arkansas, who were convicted of murder and sentenced to life imprisonment without the possibility of parole.[3] Especially significant to Washington’s case was the Supreme Court’s emphasis in Miller on the fact that the nature of these mandatory penalty schemes means that “every juvenile will receive the same penalty as every other — the 17-year-old and the 14-year-old, the shooter and the accomplice.” Id. (emphasis added). The Court recapped:
Mandatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features — among them, immaturity, impetuosity, and failure to appreciate risks and consequences. It prevents taking into account the family and home environment that surrounds him — and from which he cannot usually extricate himself — no matter how brutal or dysfunctional. It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him. Indeed, it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth — for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys.... And finally, this mandatory punishment disregards the possibility of rehabilitation even when the circumstances most suggest it.
Id. at 2468 (internal citations omitted). Finally, the Court emphasized:
[W]e think appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon. That is especially so because of the great difficulty we noted in Roper and Graham of distinguishing at this early age between “the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption.” Roper, 543 U.S., at 573, 125 S.Ct. 1183, 161 L.Ed.2d 1; Graham, 560 U.S., at -, 130 S.Ct., at 2026-2027. Although we do not foreclose a sentencer’s ability to make that judgment in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.
Id. at 2469 (footnote omitted).
Nevertheless, far from categorically barring a penalty for a class of offenders as it did in Roper and Graham, the Supreme Court in Miller ruled its decision “mandates only that a sentencer follow a certain process — considering an offender’s youth and attendant characteristics — before imposing a particular penalty,” emphasizing that “youth matters for purposes of meting out the law’s most serious punishments.” Id. at 2471. Ultimately, the Supreme Court ended with this summation:
Graham, Roper, and our individualized sentencing decisions make clear that a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles. By requiring that all children convicted of homicide receive lifetime incarceration without possibility *920 of parole, regardless of their age and age-related characteristics and the nature of their crimes, the mandatory sentencing schemes before us violate this principle of proportionality, and so the Eighth Amendment’s ban on cruel and unusual punishment...,
Id. at 2475. Accordingly, the Court reversed the judgments of the Arkansas Supreme Court and Alabama Court of Criminal Appeals and remanded the cases “for further proceedings not inconsistent with this opinion.” Id.
This resolution regrettably gives little guidance to the trial court regarding sentencing options in the present case. This much is certain, however; if the state again seeks imposition of a life sentence without the possibility of parole, the trial court must conduct an individualized examination of mitigating circumstances in considering the fairness of imposing such a sentence. Under Miller, a sentence of life without the possibility of parole remains a constitutionally permissible sentencing option. A discourse by this Court on other sentencing options is premature. We commend the state’s recognition of this fact. The better course calls for this Court to exercise restraint and for the parties to make their case before the trial court, where testimony may be taken, evidence presented, and argument made on all material issues to include the potential range of sentencing options.
For these reasons, as to count 1, we reverse Washington’s sentence of life without the possibility of parole and, as was done in Miller, remand for resentencing in conformance with that opinion. The sentence imposed as to count 2 is affirmed.
AFFIRMED, in part, REVERSED, in part, and REMANDED for further proceedings consistent with this opinion.
ROWE, J., concurs; WOLF, J., concurs with Opinion.

. Section 775.082(1), Florida Statutes (2009), states in full:
A person who has been convicted of a capital felony shall be punished by death if the proceeding held to determine sentence according to the procedure set forth in s. 921.141 results in findings by the court that such person shall be punished by death, otherwise such person shall be punished by life imprisonment and shall be ineligible for parole.

. Miller was decided on June 25, 2012, during the pendency of Washington's appeal. Despite the Supreme Court's announcing a new rule of law for the conduct of criminal sentencing for juveniles, "the rule must be applied to ‘all cases, state or federal, pending on direct review or not yet final.’ " State v. Fleming, 61 So.3d 399, 403 (Fla.2011) (quoting Griffith v. Kentucky, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987)). Accord Smith v. State, 598 So.2d 1063, 1066 (Fla.1992). See also People v. Banks, — P.3d - (Colo.App.2012). But see, Gonzalez v. State, 101 So.3d 886 (Fla. 1st DCA 2012) (denying Gonzalez' petition for a writ of habe-as corpus and adopting, in its entirety, the reasoning of the Third District Court of Appeal in Geter v. State,-So.3d-(Fla. 3d DCA 2012), holding Miller inapplicable to cases that were final before Miller was decided, by applying the retroactivity test approved by the Florida Supreme Court in Witt v. State, 387 So.2d 922 (Fla.1980), and concluding Miller "was not of fundamental significance” but, instead, was "a procedural change in law” regarding criminal sentencing, and, thus, could not be applied retroactively).

. The Supreme Court observed that twenty-nine jurisdictions mandate life without parole for children, but noted that of these jurisdictions, more than half, including Florida, "do so by virtue of generally applicable penalty provisions, imposing the sentence without regard to age.” Miller, 132 S.Ct. at 2473 and n. 13.