LOGUE, J.
On September 24, 2008, a jury found Michael Hernandez guilty of the first-degree murder of a fourteen-year-old middle school student and the attempted first-degree murder of a thirteen-year-old student. At the time of his crimes, Hernandez was fourteen years old. The trial court sentenced Hernandez to life without the possibility of parole for first-degree murder and to a consecutive term of thirty years for attempted first-degree murder.
*780 On direct appeal, Hernandez raises four issues: (1) whether his sentence for first-degree murder violates the prohibitions against cruel and unusual punishments under the Eighth Amendment to the United States Constitution and article I, section 17 of the Florida Constitution;[1] (2) whether competent, substantial evidence supports his conviction for attempted first-degree murder; (3) whether the prosecutor’s statutory discretion to “direct file” the indictment in criminal court, rather than juvenile court, violates his right to due process; and (4) whether sufficient evidence supports the trial court’s finding that he was competent to stand trial. In light of the recent decision of the United States Supreme Court in Miller v. Alabama, - U.S. -, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), we remand the case for resentencing on the first-degree murder conviction. As to the remaining issues on appeal, however, we affirm.
FACTS AND PROCEDURAL BACKGROUND
On February 3, 2004, Michael Hernandez was an eighth grade student in a gifted program at Southwood Middle School. That morning, a fellow student walked into a bathroom on the second floor of the school and saw Hernandez washing his hands. The student also saw in the reflection of a mirror another student collapsed in a toilet stall with blood on the floor. The student asked Hernandez if he had seen the body and Hernandez replied, “Yes, we should tell somebody.” Hernandez then left the bathroom and went to class. The other student hurriedly notified school officials.
The resulting investigation revealed that the student in the stall, J.G., had died. His throat had been cut and he had been stabbed in the neck and face. J.G. was a fourteen-year-old male in the eighth grade who was a friend of Hernandez. Police investigators were called to the scene and quickly discovered a bloody windbreaker and a latex glove in Hernandez’s book bag. In the early evening, Hernandez waived his Miranda[2] rights and confessed to J.G.’s murder.
According to his videotaped confession, and the evidence admitted at the trial, Hernandez planned for over a week to murder both J.G. and another male student, A.M., who was thirteen years old.
Regarding the murder of J.G. on February 3, 2004, Hernandez first convinced J.G. to join him in the bathroom. Hernandez normally did not wear a hat or jacket. Once inside the bathroom that morning, however, he donned a hat, jacket, and latex gloves. Hernandez later explained that the hat was intended to keep hair follicles from falling on the crime scene; the jacket, which could easily be removed and hidden, was intended to keep blood off his shirt; and the gloves were intended to prevent palm prints and fingerprints. He coaxed J.G. into the handicapped stall. He locked the stall door. He turned J.G., so that he was facing away from him. He drew a gravity knife with a four-inch serrated blade from his right front pocket. As J.G. began to protest, Hernandez placed his left hand over J.G.’s mouth. At some point, J.G. pushed the edge of the knife away with his right hand, opening wounds in the pads of his index and middle fingers. Hernandez made several cuts *781 across J.G.’s throat from left to right, finally making an incision four to five inches long that opened J.G.’s windpipe and severed both jugular veins. To determine if J.G. was alive, Hernandez poked the knife into his face and scalp. When he finally checked J.G.’s eyes, they were motionless. He flushed one pair of latex gloves down the toilet and put on another pair. He washed blood off his hands, jacket, and face.
Hernandez also confessed that he tried to kill A.M. the day before. Hernandez explained that, on February 2, 2004, he had lured A.M. into the same second-floor bathroom, but the thirteen-year-old balked at entering the stall. Regarding his plan, Hernandez said:
DETECTIVE: And what were your intentions yesterday?
HERNANDEZ: My intentions yesterday were to kill [A.M.] the same way I killed [J.G.] today, except for the fact that I was going to stab him in the back, and stab here. And that would have been it.
According to Dr. Steven Hoge, the defense’s psychiatrist, Hernandez decided to kill J.G. and A.M. because they knew he intended to kill others when he turned eighteen.
Shortly after confessing, Hernandez was indicted for first-degree murder and attempted first-degree murder. The defense raised the issue of whether Hernandez was competent to stand trial.[3] At the first competency hearing, held in November 2004, the court-appointed experts, Dr. Vanessa Archer, a psychologist, and Dr. Jon Shaw, a psychiatrist, testified that Hernandez did not suffer from paranoid schizophrenia or any mental illness that impacted his competency. After reviewing the relevant factors, they concluded he was competent to stand trial. The defense’s expert, Dr. Barry Rosenfeld, a psychologist, testified that Hernandez’s symptoms strongly indicated that he was suffering from paranoid schizophrenia, which impaired his ability to meet some of the competency criteria. But Dr. Rosenfeld did not render an ultimate opinion on Hernandez’s competency. After hearing the testimony, the trial court entered an order finding that, although Hernandez suffered from mental illness, he was competent to stand trial.
As trial approached, the defense moved for an updated review of Hernandez’s competency. The court appointed Dr. Ralph Richardson, a psychologist, and again appointed Dr. Archer to conduct updated evaluations. In September 2008, a second competency hearing was held. At the hearing, the court took judicial notice of Dr. Rosenfeld’s prior testimony. It also heard from Dr. Richardson, who acknowledged that Hernandez had an obsessive compulsive disorder, but who testified that Hernandez was competent to stand trial. Dr. Archer testified that her second evaluation indicated that Hernandez suffered from a severe obsessive compulsive disorder, chronic depression, and a dysthymic disorder. Nevertheless, Hernandez remained, in her opinion, competent to stand trial. At the conclusion of the hearing, based upon the testimony of the experts and his own observations, the trial court deemed Hernandez competent.
*782 Although the indictment was originally filed in the Eleventh Judicial Circuit in Miami-Dade County, the case was transferred to the Ninth Judicial Circuit in Orange County, due to pretrial publicity. At the trial, after the conclusion of the State’s case-in-chief, defense counsel moved for a judgment of acquittal on the attempted first-degree murder charge, arguing that there was no overt act done toward the commission of the crime. The motion was denied. Hernandez then presented evidence which focused on his defense that he was legally insane at the time of the crimes. The jury rejected Hernandez’s insanity defense and returned a guilty verdict on both counts. Venue was then transferred back to the Eleventh Judicial Circuit, where Hernandez was sentenced to life without the possibility of parole for first-degree murder and to a consecutive term of thirty years for attempted first-degree murder. This appeal followed.
DISCUSSION

Life Without Parole Sentence

Hernandez first argues that a sentence of life imprisonment without the possibility of parole for juveniles is unconstitutional, if it is imposed under a statutory scheme that makes the sentence mandatory. Under Florida’s sentencing statutes, Hernandez’s sentence of life without the possibility of parole was mandatory. The governing sentencing statute provides:
A person who has been convicted of a capital felony shall be punished by death if the proceeding held to determine sentence according to the procedure set forth in s. 921.141 results in findings by the court that such person shall be punished by death, otherwise such person shall be punished by life imprisonment and shall be ineligible for parole.
775.082(1), Fla. Stat. (2004) (emphasis added). In Florida, first-degree murder is a capital felony. As indicated above, the sentence for a capital felony is either death or life without parole. Because Hernandez was a juvenile at the time he committed the murder, he could not be sentenced to death. Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) (holding that the death penalty for juveniles constitutes a cruel or unusual punishment that violates the Eighth Amendment to the United States Constitution). The only remaining sentence was life without parole.
While this case was pending on appeal, the United States Supreme Court in Miller v. Alabama, — U.S. -, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), agreed with Hernandez’s argument that mandatory life sentences for juveniles are unconstitutional. Miller is the latest in a line of recent Supreme Court eases that address the constitutional limits on punishing juveniles. The Court first held that the Eighth Amendment prohibits the death penalty for juveniles. Roper, 543 U.S. at 568, 125 S.Ct. 1183. It next held that a juvenile can be sentenced to life without parole only when the juvenile is convicted of murder. Graham v. Florida, 560 U.S. 48, -, 130 S.Ct. 2011, 2034, 176 L.Ed.2d 825 (2010).
In Miller, the Court held that the Eighth Amendment’s prohibition against cruel and unusual punishments forbids the sentence of life without parole for a juvenile convicted of murder, if the imposition of the sentence is mandatory. 132 S.Ct. at 2469. Although Miller does not bar a trial court from imposing a sentence of life without the possibility of parole, it requires the sentencer “to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.” Id. The Court explained:
*783 Mandatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features — among them, immaturity, impetuosity, and failure to appreciate risks and consequences. It prevents taking into account the family and home environment that surrounds him — and from which he cannot usually extricate himself — no matter how brutal or dysfunctional. It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him. Indeed, it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth — for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys. And finally, this mandatory punishment disregards the possibility of rehabilitation even when the circumstances most suggest it.
Id. at 2468 (citations omitted).
The Court also noted that appropriate occasions for sentencing juveniles to life without the possibility of parole will be “uncommon” given the great difficulty in “distinguishing at this early age between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption.” Id. at 2469 (internal quotation omitted).
Because this case is on direct appeal, we are compelled to apply Miller in this case. State v. Fleming, 61 So.3d 399, 403 (Fla.2011) (“When the Supreme Court announces ‘a new rule for the conduct of criminal prosecutions,’ the rule must be applied to ‘all cases, state or federal, pending on direct review or not yet final.’ ”) (quoting Griffith v. Kentucky, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987)); but cf. Geter v. State, 115 So.3d 375 (Fla. 3d DCA 2012) (holding that Miller does not apply retroactively in collateral review cases).
Under Miller, Hernandez’s sentence of life without parole was unconstitutional because it was mandatory: the trial court did not have the opportunity to consider mitigating circumstances, such as age and age-related characteristics, under the sentencing statute. 132 S.Ct. at 2475. On remand, the trial court must take an individualized approach to sentencing Hernandez if the State again seeks imposition of a life sentence without parole. Id. at 2469; Washington v. State, 103 So.3d 917, 920 (Fla. 1st DCA 2012).
Unfortunately, Miller provides little guidance on how to proceed with resen-tencing juveniles convicted under mandatory sentencing schemes. Under Miller, while a sentence of life without parole remains constitutional in homicide cases, the sentencing court must be free to impose a lesser sentence when the defendant’s youth or the circumstances of the crime so indicate. Florida Statutes, however, do not currently provide for lesser sentences in first-degree murder cases. Miller has thus opened a breach in Florida’s sentencing statutes.
Both the State and Hernandez have offered solutions to fill this gap in Florida’s statutory sentencing scheme. The State, relying on B.H. v. State, 645 So.2d 987 (Fla.1994), and Waldrup v. Dugger, 562 So.2d 687 (Fla.1990), advocates for reviving a previous version of section 775.082(1), which mandated life with the possibility of parole after twenty-five years. At least one district court of appeal judge has embraced this approach. Partlow v. State, — So.3d -(Fla. 1st DCA 2013) (Makar, J., concurring, in part, and dissenting, in part) (supporting statutory *784 revival). Another district court of appeal judge has suggested that a sentencing scheme that would allow sentences for a term of years up to life without possibility of parole can be implied. Washington, 103 So.3d at 920-22 (Wolf, J., concurring). Hernandez, on the other hand, requests that he be resentenced under the second-degree murder sentencing scheme.
Without reaching these issues, we adopt the measured approach of the majority in Washington:
Under Miller, a sentence of life without the possibility of parole remains a constitutionally permissible sentencing option. A discourse by this Court on other sentencing options is premature.... The better course calls for this Court to exercise restraint and for the parties to make their case before the trial court, where testimony may be taken, evidence presented, and argument made on all material issues to include the potential range of sentencing options.
Id. at 920.
Miller did not categorically ban life sentences without parole for juvenile homicide offenders, or foreclose a trial court from considering aggravating factors in its sentencing determination. Instead, it “mandate[d] only that a sentencer follow a certain process — considering an offender’s youth and attendant characteristics — before imposing [life without parole].” Miller, 132 S.Ct. at 2471. “[A] judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles.” Id. at 2475. We, accordingly, vacate Hernandez’s life sentence and remand for re-sentencing.

Attempted First-Degree Murder Conviction

In the second issue raised on appeal, Hernandez contends that the trial court erred in denying his motion for judgment of acquittal on the attempted first-degree murder charge because the State failed to establish that he committed an overt act toward the commission of the murder.
In Florida, two elements comprise an attempt to commit a crime: (1) a specific intent to commit the crime, and (2) an overt act toward its commission. Williams v. State, 967 So.2d 735, 755 (Fla.2007); State v. Ortiz, 766 So.2d 1137, 1143 (Fla. 3d DCA 2000). An overt act, for the purpose of establishing criminal attempt, is an act that must go beyond mere preparation. Wiggins v. State, 816 So.2d 745, 747 (Fla. 4th DCA 2002); Webber v. State, 718 So.2d 258, 259 (Fla. 5th DCA 1998); State v. Coker, 452 So.2d 1135, 1136 (Fla. 2d DCA 1984). But drawing the distinction between a preparatory act and an overt act is often difficult, and depends on the facts of each case. Bist v. State, 35 So.3d 936, 941 (Fla. 5th DCA 2010); Hudson v. State, 745 So.2d 997, 1000 (Fla. 2d DCA 1999).
In Coker, the court explained the distinction:
Preparation generally consists of devising or arranging the means or measures necessary for the commission of the offense. The attempt is the direct movement toward the commission after preparations are completed. The act must reach far enough toward accomplishing the desired result to amount to commencement of the consummation of the crime. Some appreciable fragment of the crime must be committed and it must proceed to the point that the crime would be consummated unless interrupt *785 ed by a circumstance independent of the attemptor’s will.
452 So.2d at 1136 (citations omitted); see also Hudson, 745 So.2d at 1000. The overt act, however, “does not have to be the ultimate or last possible act toward consummation of the crime.” Wiggins, 816 So.2d at 747 (citing Coker, 452 So.2d at 1137).
We are reviewing the denial of a motion for acquittal. The purpose of the motion is to test the legal sufficiency of the evidence presented by the State. Espiet v. State, 797 So.2d 598, 601 (Fla. 5th DCA 2001). “In moving for a judgment of acquittal, a defendant ‘admits not only the facts stated in the evidence adduced, but also admits every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence.’ ” Beasley v. State, 774 So.2d 649, 657 (Fla.2000) (quoting Lynch v. State, 293 So.2d 44, 45 (Fla.1974)). “If, after reviewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt, sufficient evidence exists to sustain a conviction.” Pagan v. State, 830 So.2d 792, 803 (Fla.2002). Therefore, in reviewing the denial of a motion for acquittal in this case, this Court must determine whether the record contains evidence that would allow a jury to fairly and reasonably infer beyond a reasonable doubt that Hernandez had gone beyond mere preparation to kill A.M. and had actually made a direct movement towards the commission of the murder.
On the day before the murder of J.G., Hernandez convinced A.M. to follow him into the same upstairs bathroom where he later killed J.G. Once inside, Hernandez entered a handicapped stall, had on a jacket, placed a hat on his head, put on gloves, and repeatedly insisted that A.M. join him in the stall. All of these actions Hernandez himself identified as the steps he planned to take in order to accomplish the murders of A.M. and J.G. And these actions were the same steps that Hernandez took the next day when he murdered J.G. These steps went beyond mere planning and preparation. The chain of events had progressed to the point where Hernandez was only a few seconds and feet away from committing the crime.
Based on these facts and Hernandez’s statement that his intention was to kill A.M. that morning, a jury could infer beyond a reasonable doubt that Hernandez would have murdered A.M. on February 2, 2004, but for A.M.’s refusal to enter the stall. Sufficient evidence, therefore, supports Hernandez’s conviction of attempted first-degree murder.

Constitutional Challenge to Charging Hernandez as an Adult

In the third issue raised on appeal, Hernandez urges us to hold that section 985.557(1), Florida Statutes (2004), violates due process because it grants prosecutors the discretion to direct file indictments of juveniles in criminal, rather than juvenile, court. Although the direct file statute has been amended over the years, State v. Cain, 381 So.2d 1361 (Fla.1980), remains dispositive and mandates rejection of Hernandez’s claim, as he had no absolute right to be processed and charged as a juvenile. Reyna v. State, 866 So.2d 214, 215 (Fla. 3d DCA 2004); Brazill v. State, 845 So.2d 282, 287-89 (Fla. 4th DCA 2003); Grier v. State, 605 So.2d 503, 504 (Fla. 2d DCA 1992); Jones v. State, 443 So.2d 434, 435 (Fla. 5th DCA 1984).

Competency to Stand Trial

Finally, Hernandez maintains that he was incompetent to stand trial. “A trial court’s decision regarding competency will stand absent a showing of abuse of discretion.” McCray v. State, 71 So.3d *786 848, 862 (Fla.2011). The testimony of the State’s experts constituted competent, substantial evidence that directly supported the trial court’s determination that Hernandez was competent to stand trial. Even if we conclude that the defense expert’s testimony conflicted with the testimony of the State’s experts, conflicting evidence alone is insufficient to overturn a trial court’s resolution of a factual dispute that is supported by sufficient evidence. Id. (“[E]ven where conflicting evidence on an issue exists, this Court will not disturb the trial courts resolution of that factual dispute so long as it is supported by competent, substantial evidence.”); see also Hernandez-Alberto v. State, 889 So.2d 721, 727 (Fla.2004). We, therefore, uphold the trial court’s competency determination.
CONCLUSION
Hernandez’s sentence of life without the possibility of parole for first-degree murder is unconstitutional because it was man-datorily imposed. Accordingly, we vacate his sentence for first-degree murder and remand for resentencing on the first-degree murder conviction in accordance with Miller. In all other respects, we affirm.
Affirmed in part, vacated in part, and remanded for resentencing.

. Florida's prohibition against cruel and unusual punishments must be interpreted in conformity with decisions of the United States Supreme Court interpreting the Eighth Amendment's prohibition against cruel and unusual punishments. Art. I, § 17, Fla. Const.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. The test for competency to stand trial focuses on the defendant's slate of mind around the time of trial. It concerns whether the defendant comprehends the trial proceedings and is able to consult counsel and assist in his defense. Fla. R.Crim. P. 3.211. The insanity defense focuses on the defendant’s state of mind at the time he committed the offense. It concerns whether the defendant had a mental infirmity that prevented him from understanding that his actions were morally wrong. § 775.027(1), Fla. Stat. (2004).