LAGOA, J.
Cordero Neely (“Neely”) appeals from his conviction and sentence. Neely was found guilty by a jury of first-degree murder, armed robbery, attempted armed robbery while wearing a mask, and armed carjacking. He was sentenced to life in prison on all four counts. On appeal, Neely raises three issues: (1) whether the trial court erred in denying Neely’s motion to suppress his post-arrest statement because he did not properly waive his Miranda rights; (2) whether the trial court abused its discretion in declining Neely’s request to instruct the jury on the “independent act” defense; and (3) whether the life incarceration of a juvenile without parole is cruel and unusual punishment. For the reasons expressed below, we affirm Neely’s convictions but remand for a new sentencing hearing in light of Miller v. Alabama, - U.S. -, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012).
I. FACTUAL AND PROCEDURAL HISTORY
During the early morning hours of January 30, 2005, Neely, a juvenile, and two of his co-defendants, Trevor Lyons (“Lyons”) and Jesus Perez (“Perez”), robbed a young couple at gunpoint. Neely, Lyons and Perez, along with their friend Daleon Brown (“Brown”), were driving home from a club when they observed the couple sitting in a park talking. After Perez and Lyons suggested that they rob the couple, Perez stopped the vehicle. Perez and Lyons then exited the vehicle with their faces covered and proceeded to rob the victims at gunpoint. During the course of the robbery, Perez handed his gun to Neely and Neely continued to hold the victims at gunpoint.
*345 After taking items from the. victims, including car keys, the group returned to their vehicle. As they started to leave the scene, Perez discovered that they had obtained the victims’ car keys in the robbery and Perez decided that he wanted to take the car. The group then stopped, and Perez went to the victims’ car, opened the driver’s door and entered the car. As Perez tried to pull away, however, the male victim entered the car on the driver’s side and tried to stop him. A struggle ensued in the car between Perez and the victim. Neely and Lyons then exited their vehicle and came to Perez’s aid. They pointed their guns at the male victim and a shot was fired into the vehicle, killing the male victim and injuring Perez. Neely admitted ordering the victim to let Perez go, but stated that he did not fire into the car. Lyons, Neely and an injured Perez then ran back to their vehicle and the group drove away.
Neely subsequently was arrested and taken into custody. Following his arrest, Neely was interviewed by Sergeant Bill Williams (“Williams”). Williams testified that prior to commencing the interview he asked Neely whether there was anyone he could contact, such as a parent or guardian, to let them know that he had been arrested. Neely responded no and said that his mother had passed away, he did not know who his father was, and he had no siblings. Neely provided Williams with the phone number for a person named “Tray,” with whom he had been staying. Williams testified that he attempted to contact “Tray,” but the individual was uncooperative and failed to provide any information relating to Neely’s parent or guardian.
After attempting unsuccessfully to contact a parent or guardian on Neely’s behalf, Williams administered Miranda warnings to Neely both in written and verbal form. Neely affirmed each right, both verbally and in writing, and waived his rights in writing on a waiver form. Williams also asked Neely whether he was under the influence of drugs or alcohol or whether he was taking any medication, and Neely responded in the negative both verbally and in writing. Neely also acknowledged, both verbally and in writing, that he was able to read and write English and denied having any mental disorders. Williams testified that Neely was alert and coherent throughout this process and he never gave any indication that he did not understand his rights. Neely gave a statement, admitting his involvement in both the armed robbery and armed carjacking and detailing his co-defendants’ participation. The statement was videotaped and transcribed by a court reporter.
Neely moved to suppress the statement given to the police. The trial court denied that motion and the statement was admitted at trial. At trial, the trial court also denied Neely’s request for an “independent act” instruction. The jury found Neely guilty of first-degree murder, armed robbery, attempted armed robbery while wearing a mask, and armed carjacking.
Neely received four consecutive life sentences. This appeal timely followed.[2]
II. ANALYSIS
A. Suppression of Post-Arrest Statement
Neely argues on appeal that his post-arrest statement should have been suppressed because he did not properly waive *346 his Miranda rights. He claims that he lacked the requisite level of comprehension to knowingly and intelligently waive his rights. Neely also argues that his post-arrest statement should have been suppressed because the police failed to notify his parent, guardian or legal custodian. Neely contends that Williams was aware of his juvenile runaway status and involvement in the juvenile justice system and, therefore, should have attempted to contact someone involved with his cases, such as a probation officer or case manager.
The voluntariness of a juvenile’s confession is determined by an examination of the totality of the circumstances surrounding the confession. See Ramirez v. State, 739 So.2d 568 (Fla.1999). The relevant Ramirez factors to be applied in analyzing the voluntariness of a juvenile’s confession include: (1) the manner in which the Miranda rights were administered, including any cajoling or trickery; (2)the suspect’s age, experience, background and intelligence; (3) the fact that the suspect’s parents were not contacted and the juvenile was not given an opportunity to consult with his parents before questioning; (4) the fact that the questioning took place in the station house; and (5) the fact that the interrogators did not secure a written waiver of Miranda rights at the outset. Id. at 576; see also McIntosh v. State, 37 So.3d 914, 916-17 (Fla. 3d DCA 2010); Brancaccio v. State, 773 So.2d 582, 583-84 (Fla. 4th DCA 2000).
The trial court properly denied Neely’s motion to suppress his post-arrest statement as his Miranda waiver was knowing, voluntary and intelligent. The record reflects that Neely understood English and readily answered questions. He had no trouble understanding the questions put to him during the interview and Williams testified that he was alert and coherent throughout the interview process. Williams administered Miranda warnings verbally to Neely as he followed along with his own written copy and Neely affirmed, both verbally and in writing, that he understood each right. He also executed a written Miranda waiver form.
At the suppression hearing, Neely presented evidence of low reading skills and attention deficit/hyperactivity disorder in support of his argument that he lacked the requisite level of comprehension to knowingly and intelligently waive Miranda. However, “[djiminished mental capacity does not in and of itself affect the admissibility of a confession, absent improper coercive police conduct.” McIntosh, 37 So.3d at 917.
Neely argues that the police’s failure to contact a parent, guardian or legal custodian constituted improper coercive police conduct. However, as the court made clear in Frances v. State, 857 So.2d 1002 (Fla. 5th DCA 2003):
There is no constitutional requirement that police notify a juvenile’s parents prior to questioning the juvenile. Likewise, there appears to be no affirmative obligation on the part of the police to extend an opportunity to a juvenile to speak with his parents prior to questioning where the juvenile does not request such opportunity.
Id. at 1003-04 (citations omitted).
We are aware that section 985.101(3), Florida Statutes (2010), requires police to attempt to notify a juvenile’s parent, guardian, or legal custodian upon taking the juvenile into custody. However, the failure to comply with this statutory requirement does not render a confession involuntary. See Ramirez, 739 So.2d at 577. While “[t]he fact that a juvenile’s confession was given before he had the opportunity to talk with his parents or an attorney is certainly a factor *347 militating against its admissibility^] ... the existence of this fact does not preclude a finding of voluntariness depending upon all of the other circumstances surrounding the confession.” Doerr v. State, 383 So.2d 905, 907 (Fla.1980) (quoting Doerr v. State, 348 So.2d 938, 940-41 (Fla. 2d DCA 1977)). “[P]arental notification is merely one of several ‘totality of circumstances’ factors that the trial court must examine in weighing the admissibility of a juvenile confession.” McIntosh, 37 So.3d at 918.
Here, when asked by Williams if there was anyone he could contact on his behalf, Neely did not mention his foster parents, nor did he ever ask to speak to them. On the contrary, Neely responded that he had no immediate family Williams could contact and instead gave Williams a phone number for an individual named “Tray,” with whom Williams briefly spoke, but found to be uncooperative. Neely therefore fails to identify any improper or coercive conduct on the part of the police that would require the suppression of his confession.
Accordingly, we conclude that, given the totality of the circumstances, the trial court did not commit reversible error, and Neely’s post-arrest statement was not rendered involuntary because his foster parents were not present. The record reflects that the manner in which the police administered the Miranda warnings was proper and did not interfere with Neely’s understanding of his rights. Moreover, in ruling that Neely’s Miranda waiver and post-arrest statement were voluntary, the trial court properly took into consideration Neely’s age, experience, education, background, and intelligence, as well as the written waiver and videotaped interview.
B. Denial of “Independent Act” Instruction
Neely also argues on appeal that the trial court abused its discretion when it rejected his request for an “independent act” instruction because there was evidence to support his theory of defense. Our review of the record shows that the trial court did not abuse its discretion by refusing to give the jury instruction on “independent act” because the evidence did not support the instruction.
A defendant is entitled to have the jury instructed on the law applicable to his theory of defense. No instruction is necessary, however, where there is no evidence to support the theory. Ray v. State, 755 So.2d 604 (Fla.2000). The “independent act” doctrine “arises from circumstances where, after participating in a common plan or design, one co-felon does not participate in acts, committed by another co-felon, which fall outside of, and are foreign to, the common design of the original collaboration.” Dell v. State, 661 So.2d 1305, 1306 (Fla. 3d DCA 1995) (quoting Ward v. State, 568 So.2d 452, 453 (Fla. 3d DCA 1990)); see also Ray, 755 So.2d at 609; Fla. Std. Jury Instr. (Crim.) 3.6(l), Independent Act. However, when the defendant was a willing participant in the underlying felony and the murder resulted from forces that they set in motion, the “independent act” instruction is inappropriate. See Lovette v. State, 636 So.2d 1304 (Fla.1994); Perez v. State, 711 So.2d 1215 (Fla. 3d DCA 1998).
We find that the trial court correctly concluded that this was one continuous incident. The evidence showed, and Neely himself acknowledged in his statement, that the group did not flee the scene after the robbery, but rather, had only begun to leave the scene when Perez stated that he wanted to take the victims’ car. The group then waited as Perez entered the victims’ vehicle and began to drive away with it. When the male victim entered his vehicle and began to struggle with Perez, *348 Neely held the gun on the male victim. Thus, it is undeniable that Neely participated in the acts which led to the victim’s death. Death was a reasonably foreseeable consequence of the acts in which Neely was a participant. Accordingly, we find that the trial court did not abuse its discretion in declining to instruct the jury on the “independent act” defense.
C. Life Incarceration of a Juvenile Without the Possibility of Parole
Neely received four consecutive life sentences for the following offenses: first degree murder, armed robbery, attempted armed robbery while wearing a mask and armed carjacking. Under Florida law, the offense of first degree murder is a capital felony, resulting in two possible sentences: death[3] or life without parole. See § 775.082, Fla. Stat. (2008). In light of the recent decision by the United States Supreme Court in Miller v. Alabama, — U.S. —, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), we reverse and remand for resen-tencing. In Miller, the Supreme Court held that mandatory life imprisonment without parole for those under the age of eighteen at the time of their crimes violates the Eighth Amendment’s prohibition on cruel and unusual punishment. However, as this Court observed in Hernandez v. State, 117 So.3d 778, 782, 2013 WL 1136434:
Miller provides little guidance on how to proceed with resentencing juveniles convicted under mandatory sentencing schemes. Under Miller, while a sentence of life without parole remains constitutional in homicide cases, the sentencing court must be free to impose a lesser sentence when the defendant’s youth or the circumstances of the crime so indicate. Florida Statutes, however, do not currently provide for lesser sentences in first-degree murder cases. Miller has thus opened a breach in Florida’s sentencing statutes.
Given this uncertainty, this Court prudently adopted in Hernandez the following approach articulated by our sister court, the First District, in Washington v. State, 103 So.3d 917, 920 (Fla. 1st DCA 2012):
Under Miller, a sentence of life without the possibility of parole remains a constitutionally permissible sentencing option. A discourse by this Court on other sentencing options is premature.... The better course calls for this Court to exercise restraint and for the parties to make their case before the trial court, where testimony may be taken, evidence presented, and argument made on all material issues to include the potential range of sentencing options.
Hernandez, 117 So.3d at 784 (quoting Washington, 103 So.3d at 920).
Because Miller did not categorically bar a life sentence without parole for a juvenile, this decision does not preclude the trial court from again imposing a life term without possibility of parole should the trial court upon reconsideration deem such sentence justified. See Washington, 103 So.3d at 920. However, “the trial court must conduct an individualized examination of mitigating circumstances in considering the fairness of imposing such a sentence.” Id.
III. CONCLUSION
For the foregoing reasons, we affirm Neely’s convictions but vacate the sentences and remand for resentencing.
*349 Affirmed in part; reversed and remanded in part.

. Following oral argument, the Court stayed the case pending the United States Supreme Court’s decision in Miller.

. In Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), the Supreme Court held that the Eighth Amendment prohibits the death penalty for juveniles.