LEVINE, J.
Appellant appeals his convictions for two counts of first-degree murder and his sentence to life in prison. We affirm appellant’s convictions, as the trial court did not err in allowing the state to cross-examine a witness regarding the circumstances surrounding appellant’s disclosure of sexual abuse. However, because appellant was a juvenile at the time of the offense, we reverse his mandatory life sentence and remand for resentencing after consideration of the factors outlined in Miller v. Alabama, — U.S. -, 132 S.Ct. 2455, 188 L.Ed.2d 407 (2012).
In August 2007, appellant, aged sixteen, waved frantically on the side of the road towards a St. Lucie County sheriffs lieutenant who was driving to appellant’s home for a welfare check. Appellant told the lieutenant that “I’ve done something terrible ... I shot my parents.” Appellant further told him that “there’s no need for rescue, they’re dead.” Both of appellant’s parents were found dead inside the house with bullet wounds to their bodies. Appellant told a deputy during an interview that he was thinking “what would happen if I shot him and how, like pretty much planning how to best do it cause I didn’t wanna, I didn’t wanna have to run from a different room to, I wanted them both [to] be in the same room so it could be easier.” Appellant admitted to shooting his father in the back while his father was in the kitchen, and when his mother started to flee, appellant shot his mother in the side.
At trial, appellant’s friend testified that appellant stated “he felt like killing his mom and his dad because he was very angry because they wouldn’t let him do anything.” A couple hours before the shooting, appellant called his friend and asked if they could “hang out” because appellant “thought he might be ungrounded later.”
Appellant testified in his own defense that his father sexually molested him from the time he was nine or ten years old. Appellant stated that he did not tell anyone about the sexual abuse until a year after the killings because he was ashamed and embarrassed and did not want anyone to know what happened to him. Appellant also presented testimony from Dr. Stephen Alexander, a psychologist who interviewed appellant several times after the shootings, that appellant suffered from “battered child syndrome.”
Before trial, appellant had moved in li-mine to preclude the state from suggesting *581 that the defense of “battered child syndrome” had been manufactured by his defense attorneys. The trial court ruled that it would “forbid the creation of any inference that there was anything improperly done by Defense counsel,” but that “the length of time that it took for this to come out and the circumstances immediately preceding it coming out” were “fair game.”
During cross-examination of Dr. Alexander, the state asked what appellant said his defense would be during their second meeting. Dr. Alexander responded that appellant said he thought his defense attorneys were going to use an insanity defense. The trial court overruled the defense’s objection and motion for mistrial based upon attorney-client privilege.
During a bench conference, the state said it intended to ask Dr. Alexander “isn’t it true that his Defense attorneys felt that there was more there and they asked him about sexual abuse.” Appellant objected and moved for a mistrial based on the prior motion in limine. The trial court overruled the objection and denied appellant’s motion for mistrial.
The following testimony then ensued:
[PROSECUTOR]: Now ah, Doctor, would, before we get to July of '08, at some point in time, and again I’m not suggesting anything improper by the Defense, I want this record to be absolutely clear of that. At some point in time the Defense said to you they thought there might be something more there and they asked the ...
[DEFENSE COUNSEL]: Again I’m gonna object, the same objections, same motion.
COURT: Same ruling.
[PROSECUTOR]: And they asked the defendant if he had ever been sexually abused, correct?
A: I had told them earlier I thought there was more after I saw him ...
[PROSECUTOR]: Okay.
A: The first couple of times and then eventually they contacted me and said they’re getting information from him as well and they suspected that there were problems, they had found some information that they, led them to believe it was something that needed to be explored.
Q: What I’m, my direct question is very simply they told you they asked him if he had been molested, correct?
A: Eventually they ask him directly.
Q: Right, and I’m not suggesting that that, that’s their job, they have to find out and talk to their client, I have no problem, there’s nothing improper with that, however he’s a smart kid, right?
A: Yes.
[PROSECUTOR]: All right.
[DEFENSE COUNSEL]: Same objection, same motion.
COURT: Same ruling.
[PROSECUTOR]: So just like we talked about him sitting in court hearing about fear, fear, fear, if he has no insanity defense and he hears sexual abuse
[[Image here]]
[DEFENSE COUNSEL]: Judge ...
[PROSECUTOR]: Again no ...
[DEFENSE COUNSEL]: I’m sorry.
[PROSECUTOR]: No suggestion that the Defense is doing anything wrong, he’s smart enough to say maybe I should do this, maybe I should say this, isn’t he?
[DEFENSE COUNSEL]: Objection, Judge, can we approach?
COURT: You may.
Once again, appellant moved for a mistrial, arguing that the motion in limine barred the objected-to testimony. The tri *582 al court again denied the motion for mistrial. The jury found appellant guilty, and this appeal ensues.
Appellant asserts that the trial court erred by allowing the state to suggest to the jury that his defense of battered child syndrome was improperly suggested to him by the defense. “The standard of review of a trial court’s evi-dentiary rulings is abuse of discretion.” McDuffie v. State, 970 So.2d 312, 326 (Fla.2007).
Generally speaking, “[a] suggestion that the defendant suborned perjury or that a defense witness manufactured evidence, without a foundation in the record, is completely improper.” Chavers v. State, 964 So.2d 790, 792 (Fla. 4th DCA 2007) (citation omitted). In the present case, the record was not “without a foundation” “that the defendant suborned perjury.” The record showed that almost a year passed from the time of the shootings until appellant reported the alleged abuse. Appellant did not mention any abuse during his first three interviews with Dr. Alexander. Rather, appellant first mentioned the abuse only after the defense asked him whether he was abused. Thus, the trial court did not err in admitting testimony regarding the lapse in time, as it went to appellant’s credibility.
Additionally, “[t]he law is clear that attacks on defense counsel are highly improper and impermissible.” Lewis v. State, 780 So.2d 125, 130 (Fla. 3d DCA 2001) (en banc); see also Barnes v. State, 743 So.2d 1105, 1106 (Fla. 4th DCA 1999). “Although the prosecutor is free to suggest to the jury that defendant’s testimony was not credible, if the record evidence suggests that it was not, he [i]s not free to opine that defendant’s lack of candor was scripted by defense counsel.” Lewis, 780 So.2d at 130. In the present case, the state elicited testimony that the defense asked appellant whether he was abused and that appellant was a “smart kid.” Through this testimony, the state implied that appellant fabricated the defense based on the defense’s questioning of him. Such a suggestion was not improper, as it implied fabrication on the part of appellant and did not explicitly constitute an attack on defense counsel.
Appellant’s reliance on Brooks v. State, 762 So.2d 879 (Fla.2000), is misplaced, as the prosecutor in Brooks personally attacked defense counsel, whereas in the present case the prosecutor merely suggested that appellant fabricated the abuse defense. Moreover, the Brooks court vacated the appellant’s convictions not only because of the prosecutor’s verbal attacks on defense counsel, but also because of other improper comments during closing. In contrast, in the present case, appellant has not challenged the introduction of any other evidence or statements during closing.
As to the issue of sentencing, the state concedes that appellant’s sentence violates the dictates of Miller v. Alabama, - U.S. -, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012). Appellant was convicted of two counts of first-degree murder and sentenced to a mandatory term of life in prison without parole. At the time of the offense, appellant was only sixteen years old, and as such, the mandatory sentence of life without parole violates the constitutional dictates of Miller.
In Miller, the United States Supreme Court explained:
Mandatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features — among them, immaturity, impetuosity, and failure to appreciate risks and consequences. It prevents taking *583 into account the family and home environment that surrounds him — and from which he cannot usually extricate himself — no matter how brutal or dysfunctional. It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him. Indeed, it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth — for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys. And finally, this mandatory punishment disregards the possibility of rehabilitation even when the circumstances most suggest it.
Id. at 2468 (citations omitted). The United States Supreme Court concluded that a trial court is not foreclosed from imposing a life sentence without possibility of parole for a juvenile offender, as long as the trial court takes into account the various factors which demonstrate how juveniles are different, and how these differences counsel against irrevocably sentencing juveniles to a lifetime in prison. Id. at 2469.
Our court in Daugherty v. State, 96 So.3d 1076 (Fla. 4th DCA 2012), based on the dictates of Miller, reversed and remanded for a new sentence where the defendant received a sentence of life without parole for second-degree murder committed when the defendant was a juvenile. We directed the trial court “to conduct further sentencing proceedings and expressly consider whether any of the numerous ‘distinctive attributes of youth’ referenced in Miller apply in this case so as to diminish the ‘penological justifications’ for imposing a life-without-parole sentence upon appellant.” Id. at 1080. Our court noted that the trial court was “not preclude[d] ... from again imposing a life term without possibility of parole should the court upon reconsideration deem such sentence justified.” Id.
Our sister courts have also confronted cases where juvenile offenders were convicted and sentenced to life without possibility of parole. In Washington v. State, 103 So.3d 917 (Fla. 1st DCA 2012), the defendant was convicted of first-degree felony murder and sentenced to life without parole. The court concluded that
[ujnder Miller, a sentence of life without the possibility of parole remains a constitutionally permissible sentencing option. A discourse by this Court on other sentencing options is premature.... The better course calls for this Court to exercise restraint and for the parties to make their case before the trial court, where testimony may be taken, evidence presented, and argument made on all material issues to include the potential range of sentencing options.
Id. at 920.
In Hernandez v. State, 117 So.3d 778 (Fla. 3d DCA 2013), the defendant was convicted of first-degree murder and sentenced to life in prison without the possibility of parole. In Hernandez, the court recognized:
Unfortunately, Miller provides little guidance on how to proceed with resen-tencing juveniles convicted under mandatory sentencing schemes. Under Miller, while a sentence of life without parole remains constitutional in homicide cases, the sentencing court must be free to impose a lesser sentence when the defendant’s youth or the circumstances of the crime so indicate. Florida Statutes, however, do not currently provide for lesser sentences in first-degree murder cases. Miller has thus opened a breach in Florida’s sentencing statutes.
*584 Id. at 783. But see Horsley v. State, 121 So.3d 1130, 1131 (Fla. 5th DCA 2013), review granted, SC13-1938, 2013 WL 6224657 (Fla. Nov. 14, 2013) (holding that “the only sentence now available in Florida for a charge of capital murder committed by a juvenile is life with the possibility of parole after twenty-five years”).
We agree that Miller provides little direction on what the trial court may or may not do regarding the differing possible sentencing permutations. We do know, at a minimum, that the trial court may sentence a juvenile defendant to life without parole where the trial court has considered all the Miller factors “should the court upon reconsideration deem such sentence justified.” Daugherty, 96 So.3d at 1080. For the reasons stated in this opinion, we reverse and remand for a resentencing consistent with this opinion and consistent with Miller.
In conclusion, we affirm the convictions for first-degree murder, and reverse and remand for resentencing consistent with Miller.

Affirmed in part, reversed in part, and remanded.

MAY and CIKLIN, JJ., concur.